## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

| | | |
|---|---|---|
| ERIC CHRISTOPHER | ) | |
| MARTIN, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV423-174 |
| | ) | |
| CHATHAM COUNTY | ) | |
| SHERIFFS OFFICE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND REPORT AND RECOMMENDATION

The Court previously recommended that *pro se* plaintiff Eric Christopher Martin, Jr.'s Complaint be dismissed for his failure to return the forms necessary to proceed *in forma pauperis*. *See* doc. 4. One day after the Court's recommendation, Martin's forms were received by the Clerk. *See* docs. 5 & 6. Although those forms were untimely,[1] the Court

---

[1] Since Martin is incarcerated, he is entitled to the benefit of the "prison mailbox rule," under which "a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n. 2 (11th Cir. 2009). "Absent evidence to the contrary . . . , [courts] will assume that [a prisoner's filing] was delivered to prison authorities the day he signed it . . . ." *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001). The forms were due no later than July 14, 2023. *See* doc. 3; *see also* Fed. R. Civ. P. 6(d). Martin did not sign them until July 18, 2023. *See, e.g.,* doc. 6 at 1. They were, therefore, untimely. In another case that Martin has filed, the Court recently acknowledged his complaints that he does not receive mail timely at the facility where he is

**VACATES** the Report and Recommendation, doc. 4, and proceeds to screen Martin's Complaint.  *See* 28 U.S.C. § 1915A.

Because the Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in the Complaint are taken as true and construed in the light most favorable to the plaintiff.  *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011).  Conclusory allegations, however, fail.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal).

First, the Chatham County Sheriff's Office is not a proper defendant.  It is well-established that, under Georgia law, sheriff's departments are not legal entities subject to suit.  *See, e.g., Lawal v. Fowler*, 196 F. App'x 765, 768 (11th Cir. 2006) (citations omitted); *Lamb v. Camden Cnty. Sheriff's Office*, 2022 WL 2001302, at *1 (S.D. Ga. June

---

incarcerated.  *See Martin v. Chatham County Sheriff's Office*, CV423-143, doc. 6 (S.D. Ga. July 26, 2023).  Moreover, as discussed below, his Complaint in this case alleges that his outgoing mail is interfered with by jail staff.  *See* doc. 1 at 5-6.  The Court infers, therefore, that his untimely submissions are similarly attributable to delays in the facility's mail.  Martin also sent a "letter," which the Court liberally construes as a request that the Court accept his untimely filings.  *See* doc. 7.  So construed, and in conjunction with his other allegations, the Court accepts that his failure to timely file the forms was attributable to excusable neglect and **GRANTS** his constructive request for an extension of his deadline.  *See* Fed. R. Civ. P. 6(b)(1)(B).

6, 2022).  Martin's claims against the Chatham County Sheriff's Office should, therefore, be **DISMISSED**.

Substantively, Martin alleges that, on June 1, 2023, he informed Defendant Brown that he was suicidal and began "beating [his] head on the door and walls."  Doc. 1 at 5.  Brown "tried to CO[, *i.e.*, pepper] spray [Martin] to get [him] to stop," but took no other action.  *Id.*  Defendant Mauras left him in the same cell, and, with Brown, "took all [Martin's] belongings . . . ."  *Id.*  The next morning, Defendant Conyers directed him to be moved to "a cell with a camera."  *Id.*  Martin "refused to go," because the cell they proposed to move him to was not clean and "had no sprinkler."  *Id.*  He was housed in that cell for "4 or 5 days."  *Id.*

He also alleges that "they," it is unclear who, "open your legal mail before its in front of you, they copy it[,] bring [inmates] the copy[,] and say[ ] the [original] is going in your property . . . ."  Doc. 1 at 6.  He also objects that his mail to his family is not properly processed.  *See id.* (alleging, in unedited form, his "family . . . say they dont be getting my mail and I cant responded in 2D due the fact they stopped the emails where all mail expect legal mail go on the kiosk, so how can you stop my

mail saying its a privilege not a right??").  He also notes that he has had difficulty responding timely to orders in an unspecified case.  *Id.*

Martin's allegations concerning officers' responses to his claim that he is suicidal implicate a claim that those defendants were deliberately indifferent to his serious medical needs.  His allegations concerning the cell he was moved to implicate a claim that the conditions of that cell violated the Constitution.  His allegations concerning the mail implicate his First Amendment rights in several possible ways.  The Court addresses those possible claims below.

### A. Medical Needs

To offend the Eighth Amendment,[2] a government official must display "deliberate indifference to the serious medical needs of prisoners . . . "  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  This requires that (1) the prisoner suffered a sufficiently serious medical need; (2) to which the defendants were deliberately indifferent; (3) resulting in an injury.

---

[2] Although it is not entirely clear, Martin's allegations concerning contact with his lawyer suggest he is a pretrial detainee.  As a pretrial detainee, any medical-care claim is technically governed by the Fourteenth Amendment, not the Eighth.  *See Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007).  "However, the standards under the Fourteenth Amendment are identical to those under the Eighth."  *Id.* (citation omitted); *see also Thomas v. Bradshaw*, 2022 WL 333244, at *4 (11th Cir. Feb. 4, 2022) (same).

*Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). Whether a serious medical need existed is an objective standard. *Milton v. Turner*, 445 F. App'x 159, 161-62 (11th Cir. 2011). However, whether defendants were deliberately indifferent is subjective and each defendant is "judged separately and on the basis of what that person knows." *Burnette v. Taylor*, 33 F.3d 1325, 1331 (11th Cir. 2008). To allege deliberate indifference, a plaintiff must show "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Youmans v. Gagnon*, 62 F.3d 557, 564 (11th Cir. 2010). Suicidal ideation has been recognized as an objectively serious medical need. *See, e.g., Moore v. Allen*, 2020 WL 247308, at *3 (S.D. Ga. Jan. 15, 2020) (citing *Jacoby v. Baldwin Cnty.*, 596 F. App'x 757, 763 (11th Cir. 2014)) ("Plaintiff's suicidal ideation . . . could . . . constitute [a] medical need[ ] so obvious that even a lay person would recognize the necessity for medical attention.").

Martin's allegations that Brown and Mauras were aware of his suicidal ideation and self-harming and did not take action is sufficient, for screening purposes, to allege that those defendants were deliberately indifferent. His allegation that those same defendants removed property

from his cell, perhaps in an attempt to remove items he could use to harm himself, suggests that they might not have been indifferent. Similarly, his allegation that he was moved to a cell that permitted continuous observation also suggests that officers might not have been indifferent. However, the allegation that he was left in the same cell for an ambiguous period of time suggests that there was, perhaps, a delay in addressing his need. *Cf. Farrow v. West*, 320 F.3d 1235, 1246 (11th Cir. 2003) (noting that "even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." (internal citation and quotations omitted)). Those ambiguities can be addressed by Defendants Brown and Mauras upon service, discussed below.

**B. Conditions of Confinement**

The Eighth Amendment's prohibition on "cruel and unusual punishment" generally applies in circumstances where individuals are

subject to unconstitutional conditions of confinement.[3]  *See, e.g., Estelle*, 429 U.S. at 102-03 (1976).  Claims that prison conditions violate the Eighth Amendment, whether immediately or by creating an unreasonable risk, require the allegation of both an objectively serious condition and a defendant's deliberate indifference to that condition.  *See, e.g., Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015) (claim based on risk of future harm requires objective showing of "substantial risk of serious harm," "the defendants' deliberate indifference to that risk," and causation); *Thomas v. Bryant*, 614 F.3d 1288, 1303-04 (11th Cir. 2010) (discussing "two-prong showing" required for Eighth Amendment claims challenging conditions of confinement); *Ellis v. Pierce Cnty, Ga.*, 415 F. App'x 215, 217 (11th Cir. 2011) ("A pretrial detainee in a conditions-of-confinement suit must satisfy both an objective and a subjective inquiry into the conduct of the defendant prison officials.").  "[O]nly those deprivations denying the minimal civilized measure of life's necessities, [cit.] are sufficiently grave to form the basis of an Eighth Amendment

---

[3]  "In evaluating the conditions of confinement for pretrial detainees, we look to the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, though the minimum standards allowed by the due process clause are the same as those allowed by the Eighth Amendment for convicted persons." *Jacobs v. Georgia*, 820 F. App'x 882, 887 (11th Cir. 2020) (internal quotes, citations, and alterations omitted).

violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal quotation marks and citations omitted).

"[T]he Constitution does not mandate comfortable prisons . . . ." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). The conditions that Martin complains of do not rise to the level of severe deprivations which would offend the Constitution. Confinement in a cell exposing an inmate to "dried urine, blood, and feces," for limited periods does not violate the Constitution. *Anderson v. Chapman*, 2013 WL 4495827, at *2 (M.D. Ga. Aug. 20, 2013); *see also id.*, at *5 (recognizing that the conditions "were deeply unpleasant, [but] none . . . appears to have been so grave that it violates contemporary standards of decency . . . ." (internal quotation marks and citations omitted)). Similarly, the allegation that a single cell "had no sprinkler" does not state a constitutional violation. *See, e.g., Deas v. Ingham Cnty. Jail*, 2018 WL 3853521, at *4 (W.D. Mich. Aug. 14, 2018) ("The presence of sprinklers in the cells . . . might enhance safety in the jail; however, the absence of sprinklers does not make the jail inherently dangerous. The presence or absence of sprinklers is simply a part of the jail's fire safety plan. Highlighting the absence of one particular potential element of such a plan does not suffice to establish a sufficiently serious

risk to safety or a deliberate indifference to such a risk."). Martin's conditions-of-confinement claim should, therefore, be **DISMISSED**.

### C. Mail

Martin's allegations concerning the treatment of his mail implicate two potential constitutional issues, his right of access to the courts, and his right to free speech under the First Amendment. The Eleventh Circuit has held that "the right to send and receive mail exists under the First Amendment," and violations of that right may be vindicated by nominal damages, even "absent any actual injury." *Al-Amin v. Smith*, 511 F.3d 1317, 1333, 1335 (11th Cir. 2008). A viable access-to-courts claim requires an "actual injury," in the form of evidence that "a nonfrivolous[ ] post-conviction claim or civil rights action," was "impeded." *Id.* at 1332-33. "[I]n other words, the plaintiff[ ] must demonstrate that [he] had a legitimate claim that [he was] unable to pursue due to the prison's restrictions." *Bass v. Perrin*, 170 F.3d 1312, 1320 n. 13 (11th Cir. 1999).

The United States Court of Appeals for the Third Circuit has recently explained that a jail or prison's "policy of opening an inmate's legal mail *outside his or her presence* violates the First Amendment,

regardless of . . . good-faith protestations that it does not, and will not, read the contents of the communications." *Nifas v. Belles*, 2022 WL 336993, at *2 (3d Cir. Feb. 4, 2022) (internal quotation marks and citations omitted) (emphasis added).    However, allegations that defendants "kept [plaintiff's] legal documents" fail in the absence of allegations or evidence that any defendant opened legal mail outside the inmate's presence. *Id.* The Eleventh Circuit has also recognized that opening legal mail outside an inmate's presence violates the First Amendment. *Al-Amin*, 511 F.3d at 1334.   The principle is widely accepted among the Courts of Appeals. *See, e.g., Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1210 (9th Cir. 2017) ("In addition to the Third and Eleventh Circuits, the Second, Sixth, and Tenth Circuits have recognized that the opening of legal mail outside of a prisoner's presence implicates First Amendment rights." (citations omitted)).

The First Amendment right recognized in *Al-Amin* is not as expansive as it might first appear.  "Legal mail," as used by the Eleventh Circuit clearly refers to "attorney mail." *See Al-Amin,* 511 F.3d at 1334 ("Thus, we conclude that Al-Amin has a First Amendment free speech right *to communicate with his attorneys* by mail . . . ." (emphasis added)).

10

The protections afforded to attorney communications does not extend to all "legal" documents generally.   "[U]nder federal law, filings in [an] action, be they court orders or documents filed by [parties], are a matter of public record and are not confidential legal mail."[4] *Zamaro v. Moonga*, 2009 WL 5197851, at *2 (E.D. Cal. Dec. 22, 2009) (citing *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996)); *see also Vaughn v. Schoapt*, 2007 WL 3274189, at *1 (W.D. Pa. Nov. 5, 2007) ("Public Records such as Court Orders and Report and Recommendations are not special or legal mail."). The opening, and even inspection, of non-legal mail does not violate the Constitution.   *Cf. Wolff v. McDonnell*, 418 U.S. 539, 575-76 (1974) ("[F]reedom from censorship [of mail] is not equivalent to freedom from inspection or perusal."); *see also, e.g., Dickerson v. Chatman*, 2008 WL 4155624, at *3 (M.D. Ga. Sept. 5, 2008) ("In light of the fact that a prison has a legitimate security interest in opening and inspecting incoming

---

[4] Courts have recognized that, for purposes of an access-to-courts claim, court mail is "legal mail." *See, e.g., Ford v. Coleman*, 2015 WL 3404191, at *6 (M.D. Fla. May 26, 2015) (citing *Taylor v. Sterrett*, 532 F.2d 462, 475-76 (5th Cir. 1976) ("In this perspective, we hold that an inmate's right of access to the courts supports the portion of the district court's order requiring that incoming prisoner mail from courts, attorneys, prosecuting attorneys, and probation or parole officers be opened only in the presence of the inmate.")).  As discussed above, however, access-to-courts claims require allegation of an "actual injury," and, in the absence of any such injury here, whether correspondence from the Court might constitute "legal mail" in that context is irrelevant.

mail for contraband, plaintiff's allegation that his *incoming* mail was opened and read but not censored does not rise to the level of a constitutional violation." (citing *Thornburgh v. Abbott,* 490 U.S. 410, 413-14 (1989); *Turner v. Safley*, 482 U.S. 78, 91-92 (1987)).  Thus, to state a viable First Amendment claim, a prisoner must allege that the correspondence at issue was properly "legal mail," *i.e.*, correspondence with his or her attorney.

Martin's allegations are insufficient to state any First Amendment claim.  First, he does not identify any defendant who is allegedly responsible for either the mail policies or the handling of his mail, in particular.  Second, his allegations of potential impediments to an unspecified legal claim are not sufficient to allege an access-to-courts claim.  *See* doc. 1 at 6 ("I'm not sure if [the court] will accept my response . . .").  Third, his allegations concerning the treatment of his "legal mail" are too vague and conclusory to state a First Amendment claim.  Allegations that "legal mail" is opened or retained outside of his presence does not allege any fact from which the Court could infer that the correspondence in question was from his attorney, and not mail from a

court.[5]   *See, e.g., id.* at 6.   Since Martin does not allege that

correspondence with his attorney was opened outside his presence, he

---

[5] Martin's allegations concerning the placement of his mail with his property are also insufficient.  Claims concerning the retention, as opposed to the opening or reading, of attorney mail are ambiguous.  On the one hand, such retention might implicate the First Amendment concerns articulated in *Al-Amin*.  *See* 511 F.3d at 1334 ("The issue thus is whether defendants' pattern and practice of opening (but not reading) Al-Amin's clearly marked attorney mail outside his presence sufficiently chills, inhibits, or interferes with Al-Amin's ability to speak, protest, and complain openly to his attorney so as to infringe his right to free speech."); *see also Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006) ("The practice [of opening legal mail outside of an inmate's presence] deprives the expression of confidentiality and chills the inmates' protected expression, regardless of the state's good-faith protestations that it does not, and will not, read the content of the communications.  This is so because the only way to ensure that mail is not read when opened is to require that it be done in the presence of the inmate to whom it is addressed." (internal quotation marks and citations omitted)).  Those concerns do not appear diminished in any way by the retention of mail outside the inmate's presence after it has been opened.  The practical consequence is the same: prison staff are in possession of unsealed attorney-client correspondence outside the inmate's presence.

On the other hand, it is equally clear that inmates' rights to maintain the privacy of their property while incarcerated is severely limited.  The Sixth Circuit has held that allegations that prison officials "depriv[ed an inmate] of physical possession of one piece of legal mail while he was under suicide watch," was properly dismissed pursuant to §§ 1915 and 1915A.  *See Carlton v. Jondreau*, 76 F. App'x 642, 642-43 (6th Cir. 2003).  The court specifically rejected the asserted First Amendment claim.  *Id.* at 643 (noting that "[n]ot only was [plaintiff] permitted to view the contents of the letter upon receipt, but the prison acted pursuant to policy and with [a] legitimate penological objective . . . ."); *see also Troutman v. Cocke Cnty. Sheriff's Dept.*, 2010 WL 983901, at *2 (E.D. Tenn. Mar. 15, 2010) (rejecting a First Amendment claim based upon alleged seizure of legal mail, noting "[o]bviously, plaintiff had received his legal mail since it could not have been seized . . . unless he had it in his possession . . . .").  As another district court has observed, albeit in the context of a summary judgment argument, "prison officials routinely have possession of an inmate's legal mail before it is delivered, during inspections or transfers.  Possession alone does not raise an inference that the defendants acted improperly.  Absent some evidence establishing . . . that the defendants actually viewed [legal] communications outside [plaintiff's] presence, his claim fails as a matter of law."  *Mead v. Palmer*, 2016 WL 4775456, at *6 (N.D. Iowa Sept. 13, 2016).  Since Martin has not alleged that any of the "legal mail" at issue was correspondence with his attorney, the Court need not determine,

---

fails to state a First Amendment claim, but, as discussed below, he will

have an opportunity to amend that claim. *See, e.g., Jenkins v. Walker*,

620 F. App'x 709, 711 (11th Cir. 2015) (Generally, when a more carefully

drafted complaint might state a claim, a district court should give a *pro*

---

at this time, whether the retention of such correspondence outside the inmate's presence violates the First Amendment.

The implication of any other constitutional right by a correctional institution's seizure and retention of legal mail is even murkier. In *Hudson v. Palmer*, the Supreme Court held that "the Fourth Amendment proscription against unreasonable searches [and seizures] does not apply with the confines of the prison cell." 468 U.S. 517, 526 (1984); *see also id.* at 528 n. 8 ("[T]he same reasons that lead us to conclude that the Fourth Amendment's proscription against unreasonable searches is inapplicable in a prison cell, apply with controlling force to seizures."). Another court, considering a claim that an inmate's rights were violated "when [corrections officers] seized his legal mail and kept it from his possession for a period of time," conceded it was "an interesting argument, [but] it is foreclosed by *Hudson.*" *Lund v. CDCR*, 2022 WL 3012219, at *6 (C.D. Cal. June 2, 2022); *see also Gutierrez v. Reyersbach*, 2023 WL 3254735, at *2 (E.D. Cal. May 4, 2023) ("Searches of a prisoner's possessions, including legal mail, do not implicate the Fourth Amendment."). Still other courts have rejected claims that prisoners have a due-process-based property interest in "original legal mail." *See Mayberry v. Dewyer*, 2022 WL 504525, at *3 (N.D. Ind. Feb. 17, 2022) ("[The Indiana Department of Corrections] has determined that an offender may not possess original legal mail, only copies. Based on this, [plaintiff] cannot show a property interest in the originals."); *Cruse v. Mississippi Dept. of Corrs.*, 2018 WL 4053328, at *4 (N.D. Miss. Aug. 24, 2018) (rejecting due-process claim based on seizure of inmate's possessions, including legal mail); *Obataiye-Allah v. Clark*, 2014 WL 7240509, at *5 (W.D. Va. Dec. 18, 2014) (finding that prisoners "entitlement to possess personal property is always subject to the absolute discretion of [Department of Corrections] regulators, . . . , [so] plaintiff cannot establish a possessory interest in his personal property ([including] . . . personal and legal mail . . . ) which is protected by the Due Process Clause."). Again, Martin's failure to allege that the mail at issue is "legal mail," in the relevant sense, obviates any need to consider the possibility of any such claim.

*se* plaintiff at least one chance to amend the complaint before the court dismisses the action.").

Finally, Martin's allegations concerning delays in the mail do not state a violation of his First Amendment rights.   Although *Al-Amin* recognizes that "the right to send and receive mail exists under the First Amendment," 511 F.3d at 1333, short-term or sporadic delays in the mail system do not violate the Constitution, *see, e.g., Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999).   "[N]egligent interference with [handling] of inmate mail is not actionable as a constitutional violation."   *Bourne v. Sw. Va. Regional Jail*, 2014 WL 2930053, at *3 (W.D. Va. June 27, 2014) (citing *Pink v. Lester*, 52 F.3d 73, 75 (4th Cir. 1995)).   Moreover, such a claim "requires a showing of harm and more than one or two incidents of mail delivery problems."   *Id.*   Martin's allegations concerning his non-legal mail are simply too vague to state a claim.

In summary, Martin's claim that Defendants Brown and Mauras were deliberately indifferent to his expression of suicidal ideation is sufficient for service.  His claims against Chatham County Sheriff's Office and concerning the conditions of his cell fail to state a claim and do not appear amendable.  They should, therefore, be **DISMISSED**.  His claims

concerning the mail fail to state a claim but might be amended. The Court will, therefore, afford him an opportunity to do so. Accordingly, Martin is **DIRECTED** to submit an Amended Complaint clarifying his allegations concerning the jail's handling of his mail by no later than August 14, 2023. To facilitate his preparation of the Amended Complaint, the Clerk is **DIRECTED** to send him a blank Form Pro Se 14 (Complaint for Violation of Civil Rights (Prisoner)).

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to the R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are

advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

Finally, the Court must assess Martin's filing fee.  *See* 28 U.S.C. § 1915(b).  Martin's Prisoner Trust Account Statement indicates average monthly deposits of $64.17.  Doc. 5 at 1.  He, therefore, owes an initial partial filing fee of $12.83.  *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," based upon average deposits to or balance in a prisoner's account, under a specific 20 percent formula).  His account custodian shall set aside 20 percent of all future deposits to the account, then forward those funds to the Clerk each time the set aside amount reaches $10, until the balance of the Court's $350 filing fee has been paid in full.  In the event plaintiff is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian.  The balance due from plaintiff shall

be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order. [6]

Since the Court approves for service Martin's deliberate indifference claim against Brown and Mauras, a copy of Plaintiff's Complaint, doc. 1, and a copy of this Order and Report and Recommendation shall be served upon Defendants Brown and Mauras by the United States Marshal without prepayment of cost. The Court **DIRECTS** the Clerk of Court to serve a copy of this Order upon Plaintiff. The Court also provides the following instructions to the parties that will apply to the remainder of this action.

## INSTRUCTIONS TO ALL DEFENDANTS IN THIS ACTION

Because Plaintiff is proceeding *in forma pauperis*, the undersigned directs service be effected by the United States Marshal. Fed. R. Civ. P. 4(c)(3). In most cases, the marshal will first mail a copy of the complaint to a defendant by first-class mail and request the defendant waive formal

---

[6] The Clerk is **DIRECTED** to send this Order to plaintiff's account custodian immediately, as this payment directive is nondispositive within the meaning of Fed. R. Civ. P. 72(a), so no Rule 72(b) adoption is required. In the event plaintiff is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.

service of summons.  Fed. R. Civ. P. 4(d); Local R. 4.5.  A defendant has a duty to avoid unnecessary costs of serving the summons, and any defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver.  Fed. R. Civ. P. 4(d).  Generally, a defendant who timely returns the waiver is not required to answer the complaint until 60 days after the date the marshal sent the request for waiver.  Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that any Defendant in this action is granted leave of court to take the deposition of Plaintiff upon oral examination.  Fed. R. Civ. P. 30(a)(2).  Defendants are further advised the Court's standard 140-day discovery period will commence upon the filing of the last answer.  Local R. 26.1.  Defendants shall ensure all discovery, including Plaintiff's deposition and any other depositions in the case, is completed within that discovery period.

If a Defendant takes the deposition of any other person, Defendants are ordered to comply with the requirements of Federal Rule of Civil Procedure 30.  As Plaintiff will not likely attend such a deposition, the Defendant taking the deposition must notify Plaintiff of the deposition

and advise him that he may serve on that Defendant written questions Plaintiff wishes to propound to the witness, if any. Defendants shall present such questions to the witness in order and word-for-word during the deposition. Fed. R. Civ. P. 30(c). Plaintiff must submit the questions in a sealed envelope within 10 days of the notice of deposition.

## INSTRUCTIONS TO PLAINTIFF

Plaintiff is charged with the responsibility of **immediately** informing this Court and defense counsel of any change of address during the pendency of this action. Local R. 11.1. Plaintiff's failure to notify the Court of a change in his address **may result in dismissal of this case**.

**IT IS FURTHER ORDERED** that Plaintiff shall serve a copy of every pleading or other document submitted for consideration by the Court on each Defendant (or, if appearance has been entered by counsel, the Defendant's attorney). Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to each Defendant or the Defendant's counsel. Fed. R. Civ. P. 5. "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number." Fed. R. Civ. P. 10(a).

Plaintiff has the responsibility for pursuing this case.  For example, if Plaintiff wishes to obtain facts and information about the case from a Defendant, Plaintiff must initiate discovery.  See generally Fed. R. Civ. P. 26 to Fed. R. Civ. P. 37.  The discovery period in this case will expire 140 days after the filing of the last answer.  Local R. 26.1.  Plaintiff does not need the permission of the Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this time period. Id.  Discovery materials should **not** be filed routinely with the Clerk of Court; exceptions include: when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial.  Local R. 26.4.

Interrogatories are a practical method of discovery for incarcerated persons.  See Fed. R. Civ. P. 33.  Interrogatories may be served only on a **party** to the litigation, and, for the purposes of the instant case, this means that interrogatories should not be directed to persons or organizations who are **not named** as a defendant.  Interrogatories are not to contain more than 25 questions.  Fed. R. Civ. P. 33(a).  If Plaintiff wishes to propound more than 25 interrogatories to a party, Plaintiff

must have permission of the Court.  If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorney for Defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery.  Fed. R. Civ. P. 26(c), 37(a)(2)(A); Local R. 26.5.

Plaintiff has the responsibility for maintaining his own records of the case.  If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per page.  **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will authorize and require the collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press his case forward, the court may dismiss it for failure to prosecute.  Fed. R. Civ. P. 41; Local R. 41.1.

It is Plaintiff's duty to cooperate in any discovery initiated by a Defendant.  Upon no less than five days' notice of the scheduled

deposition date, Plaintiff must appear and permit his deposition to be taken and must answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the pending action.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order.  A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is <u>required</u> to prepare and file his own version of the Proposed Pretrial Order.  A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

## <u>ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT</u>

A Defendant may choose to ask the Court to dismiss this action by filing a motion to dismiss, a motion for summary judgment, or both. Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within 14 days of its service.  Failure to respond shall indicate that there is no opposition to a

motion.  Local R. 7.5.  Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendant's motion.   Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within 21 days after service of the motion.  Local R. 7.5, 56.1.  The failure to respond to such a motion shall indicate that there is no opposition to the motion.  Furthermore, each material fact set forth in a Defendant's statement of material facts will be deemed admitted unless specifically controverted by an opposition statement.  If a Defendant files a motion for summary judgment, Plaintiff will have the burden of establishing the existence of a genuine dispute as to any material fact in this case.  That burden cannot be met by reliance on the conclusory allegations contained within the complaint.  If a Defendant's motion for summary judgment is supported by affidavit, Plaintiff must file counter-affidavits if he wants to contest Defendant's statement of the facts.   If Plaintiff fails to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in the Defendant's

affidavits will be accepted as true and summary judgment may be entered

against Plaintiff pursuant to Federal Rule of Civil Procedure 56.

**SO ORDERED AND REPORTED AND RECOMMENDED**, this

<u>2nd</u> day of August, 2023.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA